IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WERNER ENTERPRISES, INC.,<br>AMERICAN INTERNATIONAL GROUP,<br>INC.,<br><div align="center">Plaintiffs,</div><br><br><div align="center">v.</div><br><br>TRUSTEES OF THE UNIVERSITY OF<br>PITTSBURGH, et al.,<br><br><div align="center">Defendants.</div> | CIVIL ACTION NO.  06-460<br><br><br><br>JUDGE JOY FLOWERS CONTI |

<u>MEMORANDUM ORDER</u>

CONTI, District Judge.

Plaintiffs Werner Enterprises, Inc. ("Werner") and American International Insurance Group, Inc. ("AIG") (collectively, "plaintiffs") filed this civil action seeking contribution from defendant medical care providers the Trustees of the University of Pittsburgh (the "University") and individuals Dr. William C. Welch ("defendant Welch"), Dr. Peter Gertzen ("defendant Gertzen"), Dr. John G. Wassil ("defendant Wassil"), and Dr. Joseph T. Morelli ("defendant Morelli) (collectively, the "defendant physicians").

This case was transferred to the Western District of Pennsylvania from the District of Ohio on April 10, 2006.  Pending before the court are motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Federal Rule of Civil Procedure 56, by defendant physicians to dismiss plaintiffs' amended complaint in its entirety.  On August 8, 2006, the court heard oral argument on the motions.  For the reasons set forth at the hearing, and for the reasons

more fully set forth herein, the court granted defendant physicians' motions and will dismiss plaintiffs' amended complaint in its entirety.  The court notes that, as confirmed by counsel for plaintiffs at the hearing, the University was not served.  The case, therefore, will be dismissed without prejudice as to the University and dismissed with prejudice as to the defendant physicians.

### *Facts Accepted as True*

This contribution case arises in connection with injuries resulting to a pedestrian, Mr. Randy Graham, that resulted from negligent truck operation by one of Werner's employees, Mr. Alfred Snowball.  Plaintiffs' Amended Complaint ("Pl.'s Am. Compl.") ¶5, 8-9.   At the time of the accident, Werner employed Mr. Snowball and AIG insured Werner.  Id. ¶9-10.  Specifically, on or about June 22, 1999, Mr. Snowball operated a truck in a negligent manner on State Route 11 in Canfield, Mahoning County, Ohio, causing a construction barrel to strike and injure Mr. Graham.  Id. ¶8.  This accident resulted in a civil action in state court instituted by Mr. Graham and his wife against Mr. Snowball and Werner in the Court of Common Pleas for Mahoning County, Ohio at docket number 01-CV-1574 (the "Ohio state court action").  Id. ¶13.  The Ohio state court action proceeded to trial and a jury returned a verdict in favor of plaintiffs and against Werner in the amount of $1.7 million.  Id. ¶14.  Plaintiffs were required to and did pay $2.1 million to settle the Ohio state court action after an appeal was filed in the Court of Appeals for the Second District of Ohio.  Id.  This sum included pre-judgment and post-judgment interest. Id.

Mr. Graham sought treatment for his medical injuries with defendants.  Id. ¶11.  Plaintiffs

allege in this lawsuit that defendants were negligent in their medical treatment of Mr. Graham.

Id. ¶12.  Plaintiffs specifically allege that surgery was performed on Mr. Graham's spine at

C5/C6 instead of at C4/C5.  Id.  Plaintiffs allege that they are entitled to contribution from

defendants as a result of this alleged malpractice and negligence for the sums plaintiffs paid to

Mr. Graham and his wife in connection with the Ohio state court action.  Id. ¶16.


### *Standard of Review*

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1

F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on

whether the plaintiff will likely to prevail on the merits.  Rather, when considering a motion to

dismiss, the court accepts as true all factual allegations in the complaint and views them in a light

most favorable to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir.

2002).  "The pleader is required to 'set forth sufficient information to outline the elements of his

claim or to permit inferences to be drawn that these elements exist.'"  Kost, 1 F.3d at 183

(quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §

1357 (2d ed. 1990)).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if,

accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom,

there is no reasonable reading upon which the plaintiff may be entitled to relief.  Vallies v. Sky

Bank, 432 F.3d 493, 494 (3d Cir. 2006).  Moreover, the court is under a duty to examine the

complaint independently to determine if the factual allegations set forth could provide relief

under any viable legal theory.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Federal Rules of Civil Procedure do not require the plaintiff to set out in his

complaint the specific facts that entitle him to relief, but rather only a "short and plain statement of the claim." FED. RULE CIV. P. 8(a)(2). Where the plaintiff's complaint, however, pleads facts beyond the requirements of Rule 8, his claim may be subject to dismissal if the specific facts alleged fail to provide relief under any viable legal theory. Camero v. Kostos, 253 F. Supp. 331, 338 (D.N.J. 1966) (granting motion to dismiss where plaintiff's complaint pled facts demonstrating defendant was subject to immunity). In addition, if the plaintiff's complaint does plead specific facts, those facts, taken as true for purposes of deciding the motion to dismiss, may create a defense to his claim. Id.; see ALA, Inc. v. CCAir, Inc., 29 F.3d 855, 859 (3d Cir. 1994); 5 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1226 (3d ed. 2004). In fact, where the plaintiff "chooses to plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court." Jefferson v. Ambroz, 90 F.3d 1291, 1296 (7th Cir. 1996).

### Analysis

The ruling on this motion to dismiss largely depends upon whether Pennsylvania or Ohio law governs plaintiffs' contribution claim. Defendant physicians rely upon identical arguments in their motions to dismiss. Defendant physicians argue that Pennsylvania state substantive law applies to plaintiffs' claim for contribution and, therefore, plaintiffs' claim for contribution should be dismissed because (1) Pennsylvania law does not recognize contribution claims from successive tortfeasors and (2) Pennsylvania law requires that, in professional liability actions such as this one, a plaintiff must file within 60 days of the complaint a certificate of merit under

Pa.R.Civ.P. 1042.3.[1]  Plaintiffs, on the other hand, argue that Ohio law and not Pennsylvania law applies to their claim for contribution and,  therefore, the motions to dismiss should be denied because (1) Ohio's statutory framework creates a right of contribution between the tortfeasor and the medical providers and (2) Ohio does not recognize the certificate of merit obligation of Pennsylvania law.

**A. Pennsylvania Choice of Law Rules Apply**

"Upon a transfer of a suit under 28 U.S.C. § 1406(a), the transferee court applies the choice of law rules of the state in which it sits."  Organ v. Byron, 435 F.Supp.2d 388, 390 (D.Del. 2006) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941)); see also Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).  This court, therefore, applies Pennsylvania choice-of-law rules to determine whether Pennsylvania or Ohio substantive law applies to plaintiffs' claims.

**B. Under Pennsylvania Conflict of Laws Analysis, Pennsylvania Substantive Law Applies**

Initially, this court must determine whether a true conflict exists between the application of Pennsylvania law and Ohio law.  See Berg Chilling Systems, Inc. v. Hull Corp.,  435 F.3d 455, 462 (3d Cir. 2006); Williams v. Stone, 109 F.3d 890, 893-94 (3d  Cir. 1997) (applying

---

[1]As noted by defendant physicians, federal courts have determined that although the rule requiring the filing of a certificate of merit is part of Pennsylvania's procedural rules, it is substantive in nature.  See, e.g., Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 509-10 (E.D.Pa. 2004) (noting that the United States Court of Appeals for the Third Circuit recently reviewed a similar issue and concluded that the New Jersey affidavit of merit statute which is analogous to the Pennsylvania certificate of merit requirement does not collide with the Federal Rules of Civil Procedure and, therefore, must be applied as substantive state law by federal courts sitting in diversity and that affidavit of merit (or similar) statutes have been applied as substantive state law in numerous other federal courts as well) (citing Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d Cir. 2000)).

Pennsylvania choice-of-law rules).  "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." Williams, 109 F.3d at 893-94 (citing Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir.1994) (applying Pennsylvania choice-of-law rules); Coons v. Lawlor, 804 F.2d 28, 30 (3d Cir.1986) (same); In re Complaint of Bankers Trust Co., 752 F.2d 874, 882 (3d Cir.1984) (same); Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429 (3d Cir.1982) (applying New Jersey choice-of-law rules)).

In the above-captioned civil action, the parties do not contest that there is a true conflict between Pennsylvania and Ohio law.  Specifically, the parties acknowledge that Pennsylvania, unlike Ohio, does not recognize successor tortfeasor liability, see Kemper Nat'l P&C Co. v. Smith, 615 A.2d 372, 376-80 (Pa. Super. Ct. 1992), and the parties acknowledge that Pennsylvania requires the filing of a certificate of merit in professional liability cases like this one pursuant to Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, while Ohio does not. The court, therefore, finds that an actual conflict exists and the court must engage in a conflict-of-laws analysis.

Pennsylvania recognizes the Second Restatement of Conflict of Laws as well as a governmental interest analysis when determining conflict-of-laws issues.  See Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006).  As the United States Court of Appeals for the Third Circuit in Berg Chilling Systems explained: "Once it is determined that an actual conflict exists, Pennsylvania follows a 'flexible rule,' that 'permits analysis of the policies and interests underlying the particular issue before the court.'"  Berg Chilling Systems, 435 F.3d at 463 (quoting Griffith v. United Air Lines, 203 A.2d 796 (Pa. 1964) and citing Myers v.

6

Commercial Union Assurance Cos., 485 A.2d 1113 (Pa. 1984) and Cipolla v. Shaposka, 267

A.2d 854 (Pa. 1970)).  "The federal courts of the Third Circuit have interpreted Griffith to mean

that a court applying Pennsylvania law should use the Second Restatement of Conflict of Laws as

a starting point, and then flesh out the issue using an interest analysis."  Id. (citing Compagnie

des Bauxites de Guinee v. Argonaut-Midwest Ins. Co., 880 F.2d 685, 688 (3d Cir. 1989);

American Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 74 (3d

Cir.1985); Melville v. American Home Assurance Co., 584 F.2d 1306, 1308-09 (3d Cir.1978);

United Brass Works, Inc. v. American Guarantee & Liability Ins. Co., 819 F.Supp. 465 (1992)).

As noted in Berg Chilling Systems, the Second Restatement dictates different approaches

depending upon the substantive law at issue.  See id.  "Thus, to properly apply the Second

Restatement and remain true to the spirit of Pennsylvania's 'flexible approach,' we must first

characterize the particular issue before the court as one of tort, contract, or corporate law – or

some hybrid – in order to settle on a given section of the Restatement for guidance." Id. (citing

Ruiz v. Blentech Corp., 89 F.3d 320, 324 (7th Cir.1996) ("To properly apply the Second

Restatement method, a court must begin its choice-of-law analysis with a characterization of the

issue at hand in terms of substantive law.").   The issue before the court in this case – plaintiffs'

contribution claim against defendants – sounds in tort.  "The Restatement's general approach

with respect to tort claims is to apply the law of the state with the most significant relationship to

the occurrence and the parties."  S.E.C. v. Infinity Group Co.,  27 F.Supp.2d 559, 564-65

(E.D.Pa. 1998) (citing Restatement (Second) of Conflict of Laws § 145 (1971); Naghiu v.

Inter-Continental Hotels Group, Inc., 165 F.R.D. 413, 421 (D.Del.1996) (noting that "[u]nder

section 145 of the Restatement, the local law of the state which 'has the most significant

7

relationship to the occurrence and the parties . . . ' will govern the rights and liabilities of the parties in a tort action.") (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1))).

Specifically, section 145 of the Restatement directs that the contacts a court should consider to determine which state has the most significant relationship are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971).  In addition, section 173 of the Restatement specifically addresses contribution and indemnity claims among tortfeasors, directing that "[t]he law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 173 (1971).[2]  In addition, the commentary to section 173 notes that the law of the jurisdiction governing the underlying claim normally will govern whether contribution can be obtained, unless some other jurisdiction has a greater interest.  See id.

Both relevant sections of the Restatement focus the court's attention on the question of what is the underlying claim for the contribution claim at issue.  Defendant physicians also identify Rodin Properties-Shore v. Cushman & Wakefield, 49 F.Supp.2d 728, 739 (D.N.J. 1999), in support of the proposition that a claim for contribution necessarily derives from a separate underlying claim, and under the Restatement, "it is the law of the jurisdiction which governs the underlying claim that also governs the claim for contribution."  Id.  (citing 3 MOORE'S FED.

---

[2]Section 173 in the commentary identifies joint, not successor, tortfeasors as the subjects of inquiry.  See id. at cmt. a, b.  This commentary, however, does not materially affect the analysis.

PRACT. § 1404[2] (3d ed. 1998);  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 173 (1969)).

In this case, if the underlying claim is a medical malpractice claim which arose in Pennsylvania,

then the Restatement points to Pennsylvania law.  If the underlying claim is the personal injury

claim that arose in an accident in Ohio and was litigated in Ohio, then the Restatement points to

Ohio law.

At oral argument, plaintiffs argued that Rodin is not binding on this court and this court

has discretion to consider the application of Ohio law in determining which state's law should

apply.  Plaintiffs argued that this court should apply Ohio law to plaintiffs' claim for contribution

because (1) Ohio law fixed the damages in the personal injury case that gave rise to this

contribution claim, (2) the relationship between these parties stems from a jury verdict that

originated in state court in Ohio, and (3) the injury to plaintiffs Werner and AIG in this case

occurred in Ohio.  Defendant physicians argued, on the contrary, that the relevant factors this

court should consider all point to Pennsylvania law.  Specifically, defendant physicians argued

that the underlying claim at issue in the case is the medical malpractice claim and, therefore, the

factors set forth in section 145 of the Restatement – namely, the place where the injury occurred,

the place where the conduct causing the injury occurred, and the place where the relationship, if

any, between the parties is centered, in particular –  all point to Pennsylvania.  Defendant

physicians argued that the only argument in favor of Ohio law is that Ohio law is the source of

the judgment against plaintiffs for which they seek contribution.  The court concurs with

defendant physicians, however, that this argument is not sufficient to overcome the determination

that the relevant underlying claim for plaintiffs' contribution claim is the alleged medical

malpractice which occurred in Pennsylvania.  By reason of the underlying claim being governed

9

by Pennsylvania law, the factors identified in sections 145 and 173 of the Restatement point to

Pennsylvania law as the appropriate choice of state law for plaintiffs' claims.

      The direction of the Restatement is clear that Pennsylvania law and not Ohio law applies

to plaintiffs' claims.  This court need not reach the governmental interest analysis that can further

"flesh out the issue" as noted in  Berg Chilling Systems, 435 F.3d at 463.  The court notes,

however, that were it to reach the interest analysis several factors would bolster the application of

Pennsylvania law because Pennsylvania has an interest in seeing that its policies with respect to

professional liability torts – including its failure to recognize successor tortfeasor liability and its

requirement that a certificate of merit be filed in professional liability actions – be enforced with

respect to medical malpractice claims that arise out of events that take place in Pennsylvania, as

this one did.  While Ohio may also have an interest in its policies with respect to medical

malpractice claims being followed, the underlying claim for contribution here is based upon

alleged medical malpractice that took place in Pennsylvania.  Therefore, Pennsylvania's interests

are greater.

**C. Under Pennsylvania Law, The Motions to Dismiss Should Be Granted**

      The parties do not seriously dispute that under Pennsylvania law the claims against

defendant physicians must be dismissed with prejudice because (1) Pennsylvania does not

recognize successor tort liability, see Kemper Nat'l P&C Co. v. Smith, 615 A.2d 372, 376-80

(Pa. Super. Ct. 1992), and (2) Pennsylvania requires the filing of a certificate of merit in

professional liability cases like this one pursuant to Rule 1042.3 of the Pennsylvania Rules of

Civil Procedure.   The court, therefore, will dismiss with prejudice plaintiffs' claims for

contribution against all defendant physicians.  Plaintiffs' contribution claims shall also be

dismissed as to the University by reason of it not being served and that dismissal will be without prejudice.

### *Conclusion*

 **AND NOW**, this 6th day of September, 2006, upon consideration of the motions to dismiss plaintiffs' amended complaint filed by defendant physicians (Doc. Nos. 5, 43, and 49/54), **IT IS HEREBY ORDERED** that plaintiffs' contribution claims are **DISMISSED WITH PREJUDICE** as to the individual physician defendants Dr. William C. Welch, Dr. Peter Gertzen, Dr. John G. Wassil, and Dr. Joseph T. Morelli, and  **DISMISSED WITHOUT PREJUDICE** as to the Trustees of the University of Pittsburgh.  The clerk shall mark this case closed.

By the court:


 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


cc:     Counsel of Record